# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHICAGO REGIONAL COUNCIL OF ) <br> CARPENTERS PENSION FUND, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> RUANE CONSTRUCTION, INC., ) <br> ) <br> Defendant. ) | No. 12-cv-09335 <br><br> Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Supplemental Retirement Fund, Chicago Regional Council of Carpenters Welfare Fund, and Chicago Regional Council of Carpenters Apprentice Training Fund (collectively, the "Funds") are employee pension and welfare plans that receive contributions pursuant to collective bargaining agreements entered into between the Chicago Regional Council of Carpenters ("CRCC") and employers, contractors, and subcontractors. This case concerns claims that Defendant Ruane Construction, Inc. failed to comply with its obligations under its collective bargaining agreement with the CRCC to properly report and pay fringe benefit contributions for certain workers performing carpentry work. The Funds sued Ruane Construction pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1131 *et seq.*, and the Taft–Hartley Act, 29 U.S.C. §§ 141 *et seq.*, alleging that Ruane Construction breached the collective bargaining agreement by underpaying contributions owed to the Funds for hours worked by employees and subcontractors. An audit was subsequently conducted. After the parties worked together to resolve most of their disagreements regarding the audit results, on August 8, 2016, the Court conducted a bench trial to determine whether

Ruane Construction still owes certain contributions to the Funds. For the reasons detailed below, the Court finds that Ruane Construction owes $1,858.19 with respect to one contractor.

**BACKGROUND**

In advance of the bench trial, the parties submitted a Joint Statement of Stipulated Facts for Trial (Dkt. No. 78), as well as copies of the CBA (Ex. B to Pls.' Position Stmt., Dkt. No. 80-2) and the Memorandum of Agreement between CRCC and the Residential Construction Employers' Council (Ex. C to Pls.' Position Stmt., Dkt. No. 80-2). The parties also submitted position statements on the issues to be decided (Dkt. Nos. 80, 81). As the material facts were not disputed, no witnesses testified at trial and instead the parties agreed that the case would be decided based on the application of the governing law to the stipulated facts. Those facts include the following.

Ruane Construction entered into an agreement to be bound by a collective bargaining agreement ("CBA") that requires it to pay certain monthly fringe benefit contributions to the Funds for each hour of carpentry[1] work that it contracted out. (Joint Stmt. Stip. Facts for Trial ¶ 5, Dkt. No. 78.) Specifically, Articles 12.1, 13.1, and 14.1 of the CBA state in relevant part that "each EMPLOYER shall pay into the [relevant Funds]. . . an amount per hour for each hour worked for an EMPLOYER during each calendar month by all of its Employees who are covered by this Agreement." (*Id.* ¶ 6.) Article 3.4 further provides, in relevant part, that "[a]ny EMPLOYER who sublets any [carpentry] work . . . shall assume the obligations of any subcontractor to the extent of Carpenter labor employed on work under contract with the EMPLOYER for prompt payment of Employee's Wages, Health and Welfare, Pension and Apprentice Training Contributions . . . ." (*Id.* ¶ 7.) Article 3.2 prohibits an employer from

---

[1] Section 1.1 of the CBA provides a detailed explanation of the kind of work covered by the CBA. As that issue is not disputed, for convenience the Court refers to the covered work here simply as carpentry work.

contracting or subcontracting any carpentry work to any entity not covered by the CBA. (Ex. B to Pls.' Position Stmt. at 7 of 23, Dkt. No. 80-2.) If the employer contracts or subcontracts work to any person who is not a signatory to the CBA, then under Article 3.5 the employer must require that the subcontractor be bound by the CBA or the employer must maintain daily records of the subcontractor's jobsite hours and remit the appropriate contributions to the Funds. (*Id.*)

Mark Ruane is the president and sole shareholder of Ruane Construction. (Joint Stmt. Stip. Facts for Trial ¶ 8, Dkt. No. 78.) Ruane has another company called Ruane Construction Services, Inc. ("Ruane Services"), which owns the trucks used for Ruane Construction's business. (*Id.* ¶ 9.) During the audit period, Ruane was building his own family residence for in Naperville, Illinois. (*Id.* ¶ 12.) He oversaw the construction himself and did not contract with a homebuilder to act as a general contractor. (*Id.* ¶ 15.) Ruane contracted with a number of different companies and individuals to perform various aspects of the construction. (*Id.* ¶ 16.) He did not contract with Ruane Construction or Ruane Services but, on occasion, he used checks drawn on Ruane Construction accounts to pay for the work done on his residence. (*Id.* ¶¶ 17–18.) Similarly, although Ruane Construction and Ruane Services had separate checking accounts, sometimes Ruane Construction's expenses were paid using checks drawn on Ruane Services's account. (*Id.* ¶¶ 10–11.)

After the Funds sued Ruane Construction and the audit was completed, the Funds initially claimed that Ruane Construction owed $3,773,882.30 in unpaid contributions. Ruane Construction challenged the audit findings and the Funds revised their claimed amount of unpaid contributions to $39,485.60. Ruane Construction subsequently agreed that $19,103.02 of the claimed unpaid contributions related to six of its employees and the parties resolved an additional claim to contributions with respect to one contractor in the amount of $1,205.08. But

3

Ruane Construction disputes that it owes the remaining $19,177.50. This disputed amount relates to work performed by individuals Len Beatty, Jesus Cahue, Marcos Rivera, and Don Daly, and companies Schneider Custom Stairs and Soffit & Siding Master. All of these contractors were paid by means of checks from Ruane Construction. (*Id.* ¶¶ 19, 25, 36, 45, 54, 62.) They worked on 3 different projects:

> (1) Beatty, Cahue, Rivera, and Schneider Custom Stairs all did work on the Ruane residence. (*Id.* ¶¶ 21, 27, 29, 38, 47.) According to Ruane, the work performed by Beatty, Cahue, Rivera, and Schneider Custom Stairs was performed at Ruane's own direction and on his behalf, individually, and not at the direction of Ruane Construction or on its behalf. (*Id.* ¶¶ 24, 33, 42, 51.)
>
> (2) Soffit & Siding Master did work to repair a neighboring house damaged by Ruane Construction. (*Id.* ¶ 57.) The homebuilder for whom Ruane Construction was working arranged for Soffit & Siding Master to do the work; Ruane Construction did not direct that work, but merely paid Soffit & Siding Master's costs. (*Id.* ¶¶ 57, 58.) Indeed, Ruane Construction has never contracted out any of its work on any of its projects to Soffit & Siding Master. (*Id.* ¶ 61.)
>
> (3) Daly performed work for Ruane Construction for the build out of an office. (*Id.* ¶ 64.) That office was to be used by Ruane Construction itself and was not constructed for a separate customer. (*Id.*)

Ruane Construction did not report any hours worked by these individuals and companies to the Funds and did not make any fringe benefit contribution payments in connection with their work. (*Id.* ¶¶ 20, 26, 37, 46, 55, 63.) There was no written contract, subcontract, or purchase order between Ruane or Ruane Construction and any of these individuals and companies. (*Id.* ¶¶ 22, 23, 31, 32, 40, 41, 49, 50, 59, 60, 66, 67.) Beatty, Cahue, Rivera, and Daly were never on Ruane Construction's payroll, and Ruane Construction never issued a W-2 or 1099 form to any of these individuals. (*Id.* ¶¶ 34, 35, 43, 44, 52, 53, 69, 70.)

## DISCUSSION

Based upon the Court's consideration of the governing law, the stipulated facts, and the documentary evidence submitted by the parties, the Court enters the following conclusions of law and findings of fact pursuant to Federal Rule of Civil Procedure 52.

### I. Conclusions of Law

The Court has federal question jurisdiction over this matter as it arises under federal statutes—namely, ERISA and the Taft–Hartley Act. *See* 28 U.S.C. § 1331. Under ERISA, plan beneficiaries may bring civil actions "[t]o recover benefits due to [them] under the terms of [the] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C § 1132(a)(1)(B). When disputes arise between employers and labor unions pursuant to a collective bargaining agreement, the Taft–Hartley Act grants federal courts jurisdiction to resolve them. 29 U.S.C. § 185(c). The parties agree that the CBA is the relevant plan document for purposes of ERISA and governs whether Ruane Construction is required to pay contributions for each of the individuals and entities that remain at issue. Specifically, under the language of the CBA, Ruane Construction owes contributions for those workers if they were employed by Ruane Construction or if Ruane Construction sublet any work to them. In light of this, the Court thus considers the stipulated facts to determine whether Ruane Construction owes contributions for the contested contractors.

### II. Findings of Fact

The parties agree that Ruane Construction did not employ any of the six contractors, so the principal question before the Court is whether Ruane Construction sublet work to them. The six individuals and corporations for which there is a dispute fall into three categories: (1) Beatty, Cahue, Rivera, and Schneider Custom Stairs, who worked on the Ruane residence; (2) Soffit &

Siding Master, who repaired damage done by Ruane Construction to a third party's home during a home-building project; and (3) Daly, who worked on a Ruane Construction office build out. The Court considers them in turn.

### A. *Work on the Ruane Residence*

Len Beatty, Jesus Cahue, Marcos Rivera, and Schneider Custom Stairs all worked on the Ruane residence. The Court determines that, based on the record, Ruane Construction did not sublet any work to them within the meaning of the CBA. Ruane Construction did not have any written contract, subcontract, or purchase order with any of the workers. The only evidence that might suggest that Ruane Construction sublet work to them is the checks from Ruane Construction. But Ruane Construction has explained that Ruane failed to abide by corporate formalities and paid for services rendered to him—as an individual—with funds from Ruane Construction's bank account. In the absence of any other evidence, the Court finds Ruane Construction's explanation convincing and concludes that Ruane contracted with and directed these workers to perform work for his own benefit, namely to work on his own personal residence. Ruane used Ruane Construction checks, and perhaps Ruane Construction funds, to pay for their work, but that does not transform the workers into Ruane Construction subcontractors.

Ruane's failure to abide by corporate formalities might or might not have been an innocent mistake. The Funds argue that Ruane and Ruane Construction made such payments not by accident but instead for tax benefits and that they should not be able to reap such benefits without paying their contribution obligations. This argument is unconvincing. If Ruane and his company's failure to abide by corporate formalities was intentional to achieve favorable (albiet undeserved) tax implications, that is a matter for the tax authorities and for which there are other

6

legal remedies. It is not a reason to give the Funds a windfall in contributions if Ruane Construction did not actually subcontract with the workers.

As plaintiffs, the Funds bear the burden of proof for their claims. 21 Charles Alan Wright & Kenneth W. Graham, Federal Practice & Procedure: Evidence § 5122 (3rd ed., 2001 Supp.). That means that the Funds must show by a preponderance of the evidence that Ruane Construction subcontracted with the workers. *See Migliorisi v. Walgreens Disability Benefits Plan*, 2008 WL 904883, at *12 (N.D. Ill. Mar. 31, 2008) (stating that party seeking to enforce benefits under a plan bears burden of proving entitlement by a preponderance of the evidence) (citing *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 663 (7th Cir. 2005)); *see also Grove v. Johnson Controls, Inc.*, 176 F. Supp. 3d 455, 467 (M.D. Pa. 2016) (applying preponderance standard to case concerning denial of welfare benefits between employer and labor union). The Funds' case here is thin: all that the Funds have done is point to payments that were made by the wrong entity. Indeed, the Funds conceded at trial that had Ruane made the check payments from his own bank account, they would have no claims. In light of the evidence that Ruane and his companies did not vigilantly allocate payments from the correct entities and Ruane's assertion that he contracted with and directed these workers for his own benefit, the Court concludes that the Funds have not carried their burden of showing that Ruane Construction owes contributions for the work on Ruane's residence.

      B.     *Repair of Damage to Third Party's Home on Ruane Construction Project*

Soffit & Siding Master did work to repair a neighboring house that had been damaged by Ruane Construction. (Joint Stmt. Stip. Facts for Trial ¶ 57, Dkt. No. 78.) Just as before, Ruane Construction only owes contributions for Soffit & Siding Master's work if Ruane Construction sublet any work to Soffit & Siding Master.

The stipulated facts make clear that Ruane Construction neither employed nor sublet work on this project to Soffit & Siding Master. Ruane Construction caused damage to a neighboring house and thereafter Ruane Construction's *client*—the homebuilder for whom Ruane Construction was working—arranged to fix the damage using Soffit & Siding Master's services.[2] (*Id.* ¶¶ 57, 58, 61.) Ruane Construction did not employ or contract with Soffit & Siding Master. (*Id.*) Rather, the homebuilder who arranged for the work to be done demanded that Ruane Construction pay for the damage and so Ruane Construction agreed and remitted payment to Soffit & Siding Master. (*Id.* ¶ 57.) This does not fall under the purview of the CBA, and thus Ruane Construction does not owe any contributions for the work performed by Soffit & Siding Master.

    C.    *Ruane Construction's Office Build Out*

With respect to Daly, Ruane Construction admits that it contracted with him to perform work for its office build out. At trial, the parties stipulated that Daly was not a signatory to the CBA. Read together, Articles 3.2 and 3.5 of the CBA prohibit employers from contracting with non-signatories of the CBA for any work within the CBA's purview unless either (1) the employer requires the worker to be bound by all provisions of the CBA or (2) the employer maintains daily records of the worker's jobsite hours and makes corresponding contributions. (Ex. B to Pls.' Position Stmt. at 7 of 23, Dkt. No. 80-2.) At trial, Ruane Construction argued that under the CBA it was entitled to hire non-signatories to the CBA to do carpentry work for itself—such as for building out its own office space—without making contributions. The Court has reviewed the CBA and sees no such exception, nor has Ruane Construction pointed to any

---

[2] The Funds mistakenly contend that Ruane Construction is arguing that it does not owe contributions for Soffit & Siding Master's work because Ruane was directing payment to Soffit & Siding Master. (Pl.'s Position Stmt. at 6, Dkt. No. 80.) But that is Ruane Construction's argument with respect to the work done on Ruane's residence, not with respect to Soffit & Siding's work.

8

language in the CBA creating such an exception. Thus, the Court finds that Ruane Construction violated the CBA by not keeping daily records of Daly's jobsite hours and remitting contributions to the Funds accordingly.

Based on the fact that Ruane Construction paid Daly $2,400, the auditor determined that Daly performed 76.5 hours of work and that Ruane Construction owed $1,858.19 in contribution payments. Ruane Construction does not argue otherwise. Rather Ruane Construction argues that Daly was paid for both labor and materials and because the Funds cannot establish how much of the $2,400 was labor, the auditor's contribution calculation is without justification. (Def.'s Trial Memo. at 7–8, Dkt. No. 81.) This argument fails. Article 3.5 of the CBA required that **Ruane Construction** keep daily records of Daly's jobsite hours. Ruane Construction failed to do so and indeed failed to present any evidence on the breakdown of the $2,400 payment. Thus, in the absence of any evidence rebutting the auditor's findings, the Court will accept the auditor's calculation that Ruane Construction owes $1,858.19 in delinquent contributions. *See, e.g.*, *Illinois Conference of Teamsters & Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1367 (7th Cir. 1995) (stating, in the context of summary judgment, that if trust fund has proved that employer is liable for delinquent contributions and that employer has failed to keep adequate records, burden shifts to employer to come forward with evidence that fund's calculations of damages are not accurate) (citing *Brick Masons Pension Trust v. Indus. Fence & Supply*, 839 F.2d 1333, 1338–39 (9th Cir. 1988); *Combs v. King*, 764 F.2d 818, 822 (11th Cir. 1985)).

## CONCLUSION

For the foregoing reasons, the Court determines that Ruane Construction is not liable for any contributions relating to the work performed by Beatty, Cahue, Rivera, Schneider Custom

Stairs, and Soffit & Siding Master. Ruane Construction is liable, however, for contribution payments for the work performed by Daly in the amount of $1,858.19. In addition, ERISA and the trust agreements provide for, *inter alia,* liquidated damages, interest, and reasonable attorney's fees. The Court will set a schedule for determination of these additional damages and fees at a later date.

ENTERED:

Dated: August 17, 2017

_____
Andrea R. Wood
United States District Judge